UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

**DECISION AND ORDER**
11-CR-194S

v.

KEVIN BATTLES,

Defendant.

## I.    INTRODUCTION

Pending before the Court is a motion (Dkt. No. 36) by defendant Kevin

Battles for modification of the Court's order of detention of June 20, 2011.

Defendant seeks release on the grounds that he has chronic diverticulitis that

might require elective surgery at some point, and that his incarceration is

exacerbating his condition.  The Government opposes release on the grounds

that defendant has not presented the Court with any new information that is

relevant to detention.  The United States Probation Office ("USPO") recommends

continued detention.

The Court held oral argument on January 19, 2012.  For the reasons

below, the Court denies defendant's motion.

## II.    BACKGROUND

This case concerns allegations that defendant and five other individuals

conspired to run a drug operation in the Western District of New York between

2010 and 2011.  The indictment, filed on June 9, 2011, contains 10 counts.  Only Counts One and Ten concern this defendant.  In Count One, the Government charged defendant with conspiracy to possess with intent to distribute, and to distribute, 28 kilograms or more of a mixture or substance containing cocaine base, along with a quantity of a mixture and substance containing cocaine; all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), and 846.  In Count Ten, the Government charged defendant with intentionally and unlawfully possessing with intent to distribute, and distributing, a quantity of a mixture and substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

The Court arraigned defendant on June 14, 2011.  On June 20, 2011, the Court held a detention hearing for defendant, at the end of which it held orally that defendant would remain in custody because he presented a risk of danger to the community and a risk of flight.  The Court relied on defendant's USPO pretrial services report, dated June 14, 2011.  According to the pretrial services report, defendant reported marijuana and cocaine use as recently as the day before the interview.  Defendant's criminal history included numerous convictions for disorderly conduct, attempted possession of stolen property, drug possession, and harassment or assault.  These convictions occurred as far back as 1983, and one of them (in 1993) occurred while defendant was on probation.

2

On January 2, 2012, defendant filed the pending motion for release.  In support of his motion, defendant submits medical records suggesting that he had several "episodes or flares of diverticulitis" in the fall of 2011.  One SOAP note in particular, dated September 16, 2011, lists defendant's subjective presentation as "patient with diverticulosis now in his fourth week of acute diverticulitis STILL awaiting urgent gastroenterology referral."  (Dkt. No. 36-1 at 8.)  That same SOAP ended with a plan of, in all capital letters, "EXTREMELY URGENT GASTROENTEROLOGY EVAL[UATION]."  (*Id.*)  A gastroenterology evaluation apparently occurred, and defendant underwent a colonoscopy on December 15, 2011.  In the report of that colonoscopy, defendant's physician at WCA Hospital noted no acute inflammation but "a large amount of diverticula[e]" with fibrous stiffness in the sigmoid colon, "probably from prior episodes of diverticulitis." (Dkt. No. 38-1 at 3.)  The report ended with an assessment that if defendant "has recurrent episodes of documented diverticulitis, he may benefit from an elective resection of this area."  (*Id.*)  The physician made no clinical findings about why or how defendant developed diverticulitis.  The physician made no finding of acute inflammation or difficulty.  Additionally, the physician made no findings about whether defendant's prison diet or other conditions of confinement contributed in any way to his chronic fibrosis.  Nonetheless, defense counsel examined defendant's medical records and has decided that "[i]t is my position that Mr. Battles' incarceration has either caused or exacerbated his current diverticulitis

flare up.  Even well-run jails are far from ideally healthy environments.  They pose a particular threat to those with chronic conditions.  Release will facilitate Mr. Battles' recovery, while probation department monitoring will ensure community protection and his return to court when required."  (Dkt. No. 36 at 3.)

Both the Government and the USPO oppose defendant's release.  The Government argues that defendant's circumstances have not changed and that defendant still cannot rebut the statutory presumption in favor of detention.  To the extent that defendant has presented new information, the Government notes that it is medical information only and that it is irrelevant to whether defendant poses a danger or flight risk.  The USPO agrees, noting that defendant is receiving medical attention and that his medical condition, by itself, does not speak to the prior probation violation or to the history of drug use, convictions, and bench warrants.

## III. DISCUSSION

"The Eighth Amendment to the Constitution states that '[e]xcessive bail shall not be required.'  U.S. Const. amend. VIII.  Consistent with this prohibition, 18 U.S.C. § 3142(b) requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'"  *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007).  Statutory factors to be considered when

assessing flight or danger include the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  *See* 18 U.S.C. § 3142(g).

With respect to flight risk, "the government carries a dual burden in seeking pre-trial detention.  First, it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight.  Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court."  *Sabhnani*, 493 F.3d at 75 (citations omitted).  "To order detention, the district court must find, after a hearing, that the government has established the defendant's dangerousness by clear and convincing evidence.  The rules of evidence do not apply in a detention hearing.  Further, the government may proceed by proffer."  *U.S. v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citations omitted).

Once the Court has issued a detention order in the manner set forth above, it may reconsider that order and reopen the detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the

5

appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f)(2).  "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event."  *U.S. v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted).  Where evidence was available to defendant at the time of the hearing, the hearing will not be reopened.  *See U.S. v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *U.S. v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

Here, defendant has not presented any new information that has a directly material bearing on whether defendant still poses a danger or flight risk. Defendant's motion papers do not address this issue at all.  Rather, defendant simply submits medical information suggesting the presence of chronic medical problems.  The Court finds two problems with defendant's presentation.  The first problem concerns the medical information on its own merits.  Defendant has not submitted any clinical findings about acute medical problems that require immediate attention.  Defendant's own physician labeled the possible need for surgery as "elective."  Defendant has not submitted any medical opinion about the origins of his diverticulitis or what factors would lessen or worsen it.  Finally, defendant has submitted no information about medical treatment for a chronic condition that he needs but is not receiving in prison.  Put another way, defendant

has not explained why release would improve a chronic condition in ways that no combination of diet and medical attention in prison could accommodate. *Cf. U.S. v. Briggs*, No. 10-CR-184, 2012 WL 843356, at *3 (W.D.N.Y. Mar. 12, 2012) (Scott, *M.J.*) ("Defendant also has not asserted that he needs treatment available only outside of jail, or that his condition otherwise would improve as a result of a change in custody status.").

The second problem with the presentation in defendant's motion papers is that defendant appears to argue that chronic medical conditions, as a matter of law, override prior findings of danger and flight risk. In his motion papers, defendant does not address the Court's prior findings at all, which leads the Court to infer that he thinks that they fall away categorically in the face of his chronic medical condition. Defendant has cited to no authority supporting this proposition, and the limited authority that the Court has found on its own suggests otherwise. *See U.S. v. Cirillo*, 149 Fed. App'x 40, 43, 2005 WL 2300217, at *3 (2d Cir. Sept. 21, 2005) (summary order) ("Neither Cirillo's heart condition nor his dental needs altered the fact that his danger to the community required detention."); *U.S. v. Marino*, 731 F. Supp. 2d 323, 327 (S.D.N.Y. 2010) ("The ultimate issue before the Court is whether any condition or combination of conditions reasonably would assure the safety of the community if Marino were released, not whether release would be better for Marino.").

Under these circumstances, the Court is content to let its prior detention order stand for now. The denial of defendant's motion, however, is without

prejudice to future motion practice that directly addresses the following two points: 1) the specific dietary needs, medical procedures, or other medical attention that a physician has found necessary to treat defendant's chronic condition and that cannot be accommodated while defendant is in custody; and 2) the manner in which the Court should balance any medical needs identified in the first point with its prior findings that defendant poses a danger and flight risk.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court denies defendant's motion for bail (Dkt. No. 36) without prejudice.  Defendant shall remain in custody pending trial.

Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

Despite the Court's order of detention, defendant shall be afforded reasonable opportunity for private consultation with counsel.  Additionally, on order of the Court or on request of an attorney for the Government, the person in charge of the corrections facility in which defendant is confined shall deliver defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding in this case.

SO ORDERED.

_/s/ Hugh B. Scott_____
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: April 5, 2012